UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- LONDON

| | |
|---|---|
| LARRY BAILEY,<br><br>    Plaintiff,<br><br>V.<br><br>DONALD J. TRUMP and RONNA ROMNEY McDANIEL,<br><br>    Defendants. | Civil Action No. 6: 20-182-KKC<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Larry Bailey has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and other provisions of federal law. [R. 1] The Court has granted his motion to proceed *in forma pauperis* by prior Order. This matter is before the Court to conduct the initial screening required by 28 U.S.C. § 1915(e)(2). This statute requires the Court to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010). When reviewing the plaintiff's complaint at this stage, the Court accepts all non-conclusory factual allegations as true and liberally construes its legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

In his Complaint, Bailey indicates that he received in the mail an envelope with a return address from "Donald J. Trump, President of the United States, Voter Identification Division." [R. 1-2 at 1] The envelope contained a "Party Affiliation Voter Card" which included Bailey's correct voter identification number and sought a $35 campaign contribution for Trump and/or other Republican candidates for office. *Id.* at 3. The "voter card" stated that Bailey's party

affiliation was Republican, *id.*, but two other documents included in the mailing stated that his party affiliation was "unconfirmed." [R. 1-2 at 4, 6] One such document requested that Bailey confirm and/or provide additional information about himself and sought donations to the Republican Party in various amounts to further its efforts in upcoming elections. *Id*. at 4-5. The mailing included a three-page letter containing political speech and seeking support for President Trump and the Republican Party. [R. 1-2 at 6-8] Bailey also received in the mailing a generic absentee ballot request form. *Id*. at 9. Finally, also included was a return envelope addressed to the Republican National Committee at a post office box in Washington, D.C. *Id*. at 2.

Bailey complains that the mailing is invasive in at least one respect as well as false and misleading in several others. Bailey asserts that the letter suggests that the "Voter Identification Division" is a government agency when no such entity exists, and that he is not required to provide a party affiliation in order to vote in national elections. [R. 1 at 3-4] He contends without explanation that the absentee ballot request form is "fraudulent," and that the defendants violated his rights under Section 6 of the Kentucky Constitution by obtaining and using information about the party affiliation which he provided when he voted in primary elections in Kentucky. *Id*. at 4-5. Bailey asserts that the defendants imply that they are tracking his voting record as a form of intimidation. He contends that statements in the included letter constitute "unsubstantiated allegations, i.e. rigged elections, conspiracy theories and dire outcomes if [Trump] is not elected." [R. 1 at 5] Finally, Bailey asserts that the defendants have illegally used the mail to solicit campaign contributions using "fraudulent" documents and falsely implying that they were sent by a government agency. *Id*. at 6.

As a result, Bailey contends that President Donald Trump and Ms. McDaniel, the chairwoman of the Republican National Committee, have conspired "to deceptively and

fraudulently interfere with my 1st Amendment right to vote and illegally solicit funds from me for political purposes." [R. 1 at 2]  In addition to his claim under the First Amendment, Bailey claims violation of numerous federal statutes, including 18 U.S.C. §§ 1341, 1342, and 1345; 39 U.S.C. § 3001; and 52 U.S.C. §§ 10307, 10101(d), as well as Section 6 of the Kentucky Constitution.  Bailey seeks injunctive relief requiring the defendants to divulge the substance of all voting information regarding him in their possession, to expunge the totality of it, and to cease any further collection of such information.  [R. 1 at 7]

Ordinarily, allegations such as those set forth by Bailey here might form the basis for a civil enforcement action under the Federal Election Campaign Act, 52 U.S.C. §§ 30101-46 ("FECA").  However, enforcement authority for those provisions lies exclusively with the Federal Election Commission.  52 U.S.C. § 30109(a)(5), (6).  *See Fed. Election Comm'n v. Novacek*, 739 F. Supp. 2d 957, 959 (N.D. Tex. 2010).  Bailey looks elsewhere for relief under a variety of federal constitutional and statutory provisions.  But because his allegations fail to set forth a viable basis for relief under them, the Court will dismiss the complaint.

First, Bailey asserts that the defendants conspired to violate his First Amendment right to vote for the candidate of his choice by attempting to intimidate him.  [R. 1 at 2, 3]  Bailey's chosen vehicle to vindicate that right, 42 U.S.C. § 1983, provides a cause of action against those persons who deprive a plaintiff of his rights under color of state law.  Defendant McDaniel is a private citizen, and Section 1983 does not reach conduct by those who are not government officials.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  Nor does her conduct become "fairly attributable to the state" merely because she obtained voter registration information from the state government.[1]  *Cf. Scott v. Hern*, 216 F. 3d 897, 906 (10th Cir. 2000)

---

[1]  Like many states, Kentucky makes voter registration information a matter of public record which may be reviewed upon request.  *See* Ky. Rev. Stat. 116.095 ("The county clerk shall permit any citizen, at

3

("A private individual does not engage in state action simply by availing herself of a state procedure."); *Manax v. McNamara*, 842 F. 3d 808, 813 (5th Cir. 1998).

Defendant Trump, as President of the United States, acts under color of federal, not state, law, and therefore Section 1983 does not provide a cause of action against him for a claimed violation of federal rights. However, the remedy implied in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) for those acting under color of federal law might provide an avenue for relief. That said, the Supreme Court has recently held that "expanding the *Bivens* remedy is now a disfavored judicial activity," and the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citations omitted). To determine whether a remedy under *Bivens* should be implied, the Court must first determine whether Bailey's claim presents a context new and different from *Bivens* claims previously permitted. If so, it must then decide whether "special factors counsel hesitation" against expanding *Bivens* to the new context absent affirmative action by Congress. *Id*. at 1857, 1875.

The Supreme Court has only recognized an implied cause of action under *Bivens* in three types of cases: (1) a police search and seizure in violation of the Fourth Amendment; (2) gender discrimination by a congressman in violation of the Fifth Amendment for an employee not covered by federal employment discrimination law; and (3) deliberate indifference toward a prisoner in violation of the Eighth Amendment. Bailey asserts a claim for asserted interference with his right to vote under the First Amendment, an area where the Supreme Court has not previously implied a *Bivens* action. *Reichie v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Bailey therefore is asking the

---

all reasonable hours, to inspect or make copies of any registration record, without any fee."). A qualified person may complete a Request for Voter Registration Data and file it with the State Board of Elections to obtain such data for non-commercial use. *See* Ky. Rev. Stat. 117.025(3)(h); 31 KAR 3:010.

4

Court to extend *Bivens* to a new context.  In determining whether special factors counsel against such an extension, the Court evaluates whether the judicial branch is better situated than Congress "to consider and weigh the costs and benefits of allowing a damages action to proceed."  And especially where "there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."  *Ziglar*, 137 S. Ct. at 1857-58.  As noted above, Congress has enacted a comprehensive statutory and regulatory scheme to address matters of the kind asserted by Bailey.  And as discussed below, Bailey himself invokes other statutory provisions pertinent to the subject matter of his claims, undermining the need for an implied cause of action.  In another context the Supreme Court has refused to extend *Bivens* to cover free speech claims under the First Amendment because "Congress is in a better position to decide" how to address such issues.  *See Bush v. Lucas*, 462 U.S. 367, 390 (1983).  The same result is warranted here, and Bailey's First Amendment claims will be dismissed.

Bailey next contends that the defendants violated 18 U.S.C. §§ 1341, 1342, and 1345 through their actions.  Section 1341 criminalizes mail fraud, while Section 1342 criminalizes the use of fictitious names in furtherance of mail fraud.  However, these sections are part of the criminal code, and actions to enforce them must be brought by federal prosecutors, not private citizens.  Neither Section 1341 nor Section 1342 provide for a private right of action.  *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178-79 (6th Cir. 1979); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("The district court ... properly concluded that Saro possessed no private right of action against Brown for alleged violations of 18 U.S.C. §§ 1341 & 1343."); *Graham v. Distasio*, No. 14-6677, 2015 WL 336473, at *1 n.1 (E.D.N.Y. Jan. 23, 2015); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999) (no private right of action under either section).  For its

5

part, Section 1345 authorizes a civil enforcement action to enjoin violations of Sections 1341 and 1342, but confers the authority to commence such an action only upon the United States Attorney General. Because Bailey lacks standing to assert violation of these provisions, his claims under these provisions will be dismissed.

Bailey next asserts that the defendants violated 39 U.S.C. § 3001. This section relates to the Postal Service, and generally identifies certain types of "matter" as "nonmailable." This includes fraudulent mail under Section 1341 or the use of fictitious names in furtherance of a scheme to defraud through the mail under Section 1342. 39 U.S.C. § 3001(a). But the statute merely indicates that the Postal Service shall dispose of such nonmailable matter, 39 U.S.C. § 3001(b), and the section does not expressly provide a private right of action. What authority does exist indicates "that Congress clearly intended to preclude arbitrary and capricious judicial review of the substance of Postal Service regulations, policies and procedures." *Reese Bros., Inc. v. U.S. Postal Service*, 905 F. Supp. 2d 223, 252-53 (D.D.C. 2012). Because Bailey's complaint fails to clearly articulate a viable claim under the identified statute, it will be dismissed.

Finally, Bailey contends that the defendants have violated two provisions of the Voting Rights Act of 1965 ("VRA"), specifically 52 U.S.C. § 10101(d) and 52 U.S.C. § 10307. Section 10101(d) is not prescriptive, it merely vests federal district courts with jurisdiction over "proceedings instituted pursuant to this section." The Court will liberally construe Bailey's reference to that subsection as one to the substantive anti-discriminations provisions set forth in Section 10101(a) and (b). Section 10101(a) prohibits interference with the right to vote based upon color, race, or previous condition of servitude as well as the use of literacy tests; Section 10101(b) prohibits any person from using or attempting to use intimidation or coercion to

interfere with another person's right to vote for the candidate of their choice. Similarly, 52 U.S.C. § 10307(b) prohibits any person from using or attempting to use intimidation or coercion against another person for voting, attempting to vote, or for urging or aiding another person to vote.

In order to state a viable claim under these provisions the plaintiff must allege both an act of intimidation or an attempt to intimidate, and that the defendant committed the act with the intent to intimidate or attempt to intimidate. *See Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985) (noting that even if plaintiffs' evidence showed actual intimidation of voters when officials searched voting records, plaintiffs could not succeed in light of their failure to show that the officials intended to intimidate); *United States v. McLeod*, 385 F.2d 734, 740-41 (5th Cir. 1967). Here, Bailey makes no clear allegation that the defendants had the specific intent to intimidate recipients of the mailing in relation to their right to vote. Notably, the materials to which he objects appear devised to promote voting in favor of Republican candidates for office rather than to deter voting in favor of other candidates. In addition, Bailey merely labels the defendants' conduct as intimidation, but he fails to provide a factual basis for that characterization. A complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face," and this requires more than mere labels and conclusions coupled with an assertion that the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550, 555 (2007).

As noted above, the solicitation materials reference party affiliation three times (twice as "unconfirmed"), and do not contain any explicit or veiled threat or otherwise coercive language. Bailey's conclusory allegations are not sufficient to state a viable claim of intimidation or coercion under the Act. *See United States v. Beaty*, 288 F.2d 653, 656 (6th Cir. 1961); *see also*

7

*Dekom v. Nassau Co.*, 595 F. App'x 12, 14-15 (2d Cir. 2014); *Parson v. Alcorn*, 157 F. Supp. 2d 479, 493-95 (E.D. Va. 2016) (unadorned assertion that a potential voter felt intimidated or deterred is insufficient to state a viable claim that voting rights have been burdened under the VRA); *Delegates to Republican Nat. Convention v. Republican Nat. Comm.*, No. SACV 12-00927 DOC, 2012 WL 3239903, at *6-9 (C.D. Cal. Aug. 7, 2012); *Arizona Democratic Party v. Arizona Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *6-10 (D. Ariz. Nov. 4, 2016).  Bailey's claim under the Voting Rights Act will therefore be dismissed for failure to state a claim.

Apart from his federal claims, Bailey makes a passing assertion that the defendants violated his rights under Section 6 of the Kentucky Constitution.  However, a district court may "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction ..." 28 U.S.C. § 1367(c)(3).  Here, the Court has dismissed all of the plaintiff's federal claims, and concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction over any claims asserted under state law.  *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988).  The Court will therefore dismiss the plaintiff's state law claims without prejudice.

Accordingly, it is **ORDERED** as follows:

1. Plaintiff Larry Bailey's claims asserted pursuant to 42 U.S.C. § 1983; 18 U.S.C. §§ 1341, 1342, and 1345; 39 U.S.C. § 3001; and 52 U.S.C. §§ 10307, 10101(d) are **DISMISSED**.  Plaintiff's claims asserted under Section 6 of the Kentucky Constitution are **DISMISSED** without prejudice.

2. This matter is **STRICKEN** from the Court's docket.

Dated October 22, 2020



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY